IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAWRENCE GENE JACKSON, | § | |
| a/k/a LAWRENCE GENE PAGE | § | |
| #23003214, | § | |
| Plaintiff, | § | |
| | § | No. 3:22-cv-02408-G (BT) |
| v. | § | |
| | § | |
| SHERIFF BROWN, et al., | § | |
| Defendants. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

This is a *pro se* civil rights action under 42 U.S.C. § 1983.[1] The Court should dismiss this case under 28 U.S.C. § 1915A and § 1915(e)(2)(B) because Plaintiff Lawrence Gene Jackson fails to state a claim upon which relief may be granted. Additionally, the Court should count the dismissal of this case as Jackson's third "strike" for purposes of 28 U.S.C. § 1915(g).

### Background

On October 21, 2022, Jackson filed a handwritten submission with the heading: "Petitioner Motion Of Dallas County Jail Administrators Denying Him Access To Court." Compl. 1 (ECF No. 3). Although his claims are difficult to discern, the Court construed this submission as an attempt to

---

[1] On October 28, 2022, the Court severed Jackson's civil rights claims from a habeas action he filed under 28 U.S.C. § 2254. *See Jackson v. Dallas County Jail, et al.*, Case No. 3:21-cv-2482-G-BT. Thereafter, the Court granted Jackson leave to proceed *in forma pauperis* but withheld issuance of process pending judicial screening. Ord. (ECF No. 10).

1

bring civil claims challenging the circumstances of his confinement. For example, Jackson alleges "[t]he Dallas County System, and the Jail System are deliberately causing overcrowding in its jail." *Id.* at 4.

In response to an Order and Notice of Deficiency (ECF No. 5) advising Jackson that the October 21, 2022 submission did not comply with Federal Rule of Civil Procedure 8(a), he filed an amended complaint (ECF No. 8) on the court-approved form and several handwritten attachments. In these papers, Jackson makes numerous seemingly unrelated allegations and statements. He alleges Bill Hill, the former Dallas County District Attorney, worked for years to revoke his parole for technical violations and send him back to prison. Jackson further alleges that he could not prove he served time for an "illegal" sentence imposed in 2001 because the court system or parole board "illegally" changed his Texas Department of Criminal Justice (TDCJ) number in 2016. Am. Compl. 3-4. He complains his former parole officers, Mr. White and Mrs. Pouncey, sent him to a facility in East Texas on June 13, 2016, but he was not "approved by [the] parole board" to be sent to the facility until July 7, 2016. *Id.* Jackson does not name Mr. White or Mrs. Pouncey as defendants, however.

Jackson also alleges that prior to December 24, 2020, he wrote Sheriff Marian Brown, the Dallas County Sheriff, about being placed in special housing in retaliation for writing anti-gang legislation in 2007. He claims this information "leaked" through Officer Wayne, and it resulted in him

being assaulted. *Id.* at 4-5. Jackson further claims he spent seven days in a holding cell prior to being placed in administrative custody with "gang members and capital murder cases." *Id.* He contends Officer Weeks, "who had control [of the] pod officers to open doors for/to gang members," threatened him for ten months. *Id.* at 5.

Jackson alleges that in October 2021, he wrote to Internal Affairs, but he was released on November 18, 2021, before he could speak with Officer Allman. Jackson further alleges that Officer Allman launched an investigation, but Officer Allman did not want his discovery disclosed to the Court. Jackson claims that since he has been incarcerated again, he has talked with Officer Payton and Officer Vargas.

Jackson next alleges the guards on the north tower "pretended inmates were smoking coffee and not K2 which is untrue. This helped lead to coffee being taken off commissary[.]" *Id.* at 6. He claims inmates in prison should be allowed to smoke in county jails, and inmates that smoke should be separated from the non-smokers. Jackson concludes this thought by stating, "Buying cigarettes off commissary is wiser than buying K2 from officers." *Id.*

Jackson alleges Sheriff Brown banned county inmates from attending sessions in the law library and having Bibles in jail. He further alleges Sheriff Brown denied inmates access to the courts and also denied inmates their right to worship.

3

Next, Jackson claims Sheriff Brown allowed members of the Dallas County Court System to process him in the Dallas County Jail as "Lawrence Gene Jackson" rather than "Lawrence Gene Page." *Id.* at 7. Jackson asserts this error caused him to remain in jail after his parole warrant was "lifted" on March 18, 2021. *Id.* at 7. He further asserts his former parole officer, Mr. White, issued a blue warrant for his arrest on March 21, but Mr. White knew the warrant had been lifted.

On February 24, 2023, Jackson filed a handwritten "Proposal For Jail House Reforms" (ECF No. 12), in which he sets forth several proposals for prison reforms, such his idea to "issue a written order to [the] Texas Senate to stop county jails of Texas from hiring Detection [sic] officers who are gang relative[s] [to] Crips, Bloods, Tango Blast, City Boys." *Id.* at 2. Jackson explains that he is presenting "massive proposal[s] for county jail reforms, prison reforms" because the proposed reforms are "a move in [the] right direction." *Id.* at 6.

As relief in this lawsuit, Jackson seeks $100 million for mental anguish and suffering.

## Legal Standards

Jackson's amended complaint and other filings are subject to preliminary screening under 28 U.S.C. § 1915A. That section provides in pertinent part:

> The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity [and] [o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a)-(b).

Under 28 U.S.C. § 1915(e), a district court may also summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Analysis

The Court liberally construes Jackson's filings with all possible deference due a *pro se* litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*pro se* pleadings are "to be liberally construed," and "a *pro se*

5

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam) (noting that allegations in a *pro se* complaint, however inartfully pleaded, are held to less stringent standards than form pleadings drafted by lawyers); *Cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice"). Even under this most liberal construction, however, Jackson's pleadings fail to state a claim upon which relief can be granted.

The Court first considers Jackson's claims against three individuals named as defendants: Bill Hill, Sheriff Brown, and Sergeant Henderson.

**1. Bill Hill**

Jackson alleges Bill Hill, the former Dallas County District Attorney, used his 1996 conviction, which had been discharged, to resentence him to prison rather than using a 2001 case. Am. Compl. 3.

A prosecutor is absolutely immune when "[he] acts in [his] role as an advocate for the state by initiating and pursuing prosecution," or "[his] conduct is 'intimately associated with the judicial phase of the criminal process.'" *Beck x. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 637 (5th Cir. 2000) (citing *Burns v. Reed*, 500 U.S. 478, 491-92 (1991)). Here, Jackson alleges a former District Attorney, Bill Hill, improperly used a discharged conviction against him. However, Hill was acting in his role as

6

state prosecutor. Thus, Hill is entitled to absolute immunity, and the Court should dismiss with prejudice Jackson's claims against former District Attorney Hill. *See Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994) (holding a dismissal based on absolute immunity was properly dismissed with prejudice).

**2. Sheriff Marian Brown**

Jackson also names Marian Brown, the Dallas County Sheriff, as a defendant. Am. Compl. 3. Specifically, Jackson alleges Sheriff Brown booked him into the Dallas County Jail with a "name used in [a] 1996 conviction to cover up [an] illegal sentence in 2001." *Id.* Jackson further alleges Sheriff Brown banned county inmates from attending sessions in the law library and having Bibles in jail. Finally, Jackson claims Sheriff Brown denied inmates of their access to the courts and also denied them the right to worship.

Claims lodged against a public official, like Sheriff Brown, in her "official capacity" are claims against the governmental entity the official represents—in this case, Dallas County. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). For a municipality such as Dallas County to be liable under § 1983, a plaintiff must identify a policymaker, an official policy, and a violation of his constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)).

7

Jackson fails to demonstrate a § 1983 violation here. Moreover, even if Sheriff Brown was the official policymaker, Jackson has failed to state there was an official policy at issue, and that the policy or custom violated his constitutional rights. For these reasons, the Court should dismiss Jackson's claims against Sheriff Brown.

### 3. Sergeant Henderson

Jackson alleges that Defendant Sergeant Henderson allowed "SRT Officer Weeks to threaten [his] life with gang members." Am. Compl. 3.

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that prison officials violate their duty to protect inmates under the Eighth Amendment when two elements are met. *Id.* at 833; *see also Jason v. Tanner*, 938 F.3d 191, 195 (5th Cir. 2019) (noting *Farmer* held that prison officials have a duty to protect inmates from violence at the hands of other inmates). First, under an objective standard, the deprivation or harm must be sufficiently serious. *Famer*, 511 U.S. at 834. Second, under a subjective standard, the prison official must have been deliberately indifferent to the deprivation or harm suffered. *Id.* Here, even if Jackson has somehow demonstrated he was incarcerated under conditions posing a substantial risk of harm to him, he has failed to plead sufficient facts to suggest that Sergeant Henderson acted with deliberate indifference to a serious risk of harm to Jackson posed by the purported gang members. *See Pierce v. Collier*, 843 F. App'x 619, 620 (5th Cir. 2021) (per curiam) (citing *Legate v.*

8

*Livingston,* 822 F.3d 207, 210 (5th Cir. 2016)). Accordingly, Jackson has failed to state an Eighth Amendment claim against Sergeant Henderson for failure to protect him from the other inmates. *Id.* (citing *Legate,* 822 F.3d at 209-10; *Coleman v. Sweetin,* 745 F.3d 756, 763 (5th Cir. 2014)).

### 4. Remaining Claims

Jackson also generally claims the "Dallas County Court System" refuses to rule on inmates' pretrial motions and threatens the inmates with lengthy sentences "if they don't cop out [of] this." Am. Compl. 9. He contends the convictions in Dallas County are the result of defendants being forced to "cop out" to "weak" cases. *Id.* Finally, Jackson contends the Dallas County Court System fails to comply with Supreme Court precedent when it refuses to grant bail to those inmates who cannot afford it. But Jackson does not allege that any Dallas County court took—or failed to take—any action in his case. And he does not name any Dallas County court official as a defendant. To the extent Jackson seeks relief on behalf of other inmates in the Dallas County Court System, he has no standing to assert such claims. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (recognizing a plaintiff "generally must assert his own legal rights and interests"); *see also O'Hair v. White*, 675 F.2d 680, 687 (5th Cir. 1982) ("a plaintiff generally may not rest his claim to relief on the legal rights of third parties") (citing *Warth*, 422 U.S. at 499; *Rogers v. Brockette*, 588 F.2d 1057, 1060-62 (5th Cir. 1979)).

9

In sum, Jackson's pleadings fail to state a claim upon which relief may be granted, and his amended complaint should therefore be dismissed.

## Conclusion

The District Court should dismiss the § 1983 action under 28 U.S.C. §§ 1915A and 1915(e)(2)(B). The dismissal of this case counts as Jackson's third "strike" for purposes of 28 U.S.C. § 1915(g).

Signed April 13, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).